OPINION
SLOVITER, Circuit Judge.
Appellant Travis Denny, who was an inmate at the Federal Correctional Institution (“FCI”) at Fairton, New Jersey, challenges the Disciplinary Hearing Officer’s (“DHO”) findings upheld by the District Court. The DHO found that Denny possessed weapons in violation of a prison regulation and sanctioned him with the forfeiture of forty days of good time credit and imposition of sixty days in disciplinary segregation. During a search, prison officials discovered homemade weapons hidden in Denny’s cell. Based solely on the presence of the weapons in his two-inmate cell, Denny was sanctioned as set forth above. He subsequently submitted a petition for a writ of habeas corpus to the District Court pursuant to 28 U.S.C. § 2241 arguing, inter alia, that prison officials violated his Fourteenth Amendment due process rights by requiring him to forfeit the good time credits. The District Court sua sponte dismissed the petition, and Denny appealed.
I. Background
The factual record in this appeal was not fully developed because the District Court acted sua sponte in dismissing the case pursuant to 28 U.S.C. § 2243 before the BOP had entered its appearance and before any discovery had taken place. Accordingly, the record before this court is limited to the materials submitted by Denny with his habeas petition.
Denny shared his cell with one other inmate. During a routine search of the cell in March 2009, a corrections officer found a six and one-half inch long pointed weapon in the duct work of the vent above the sink between Denny’s cell and an adjacent cell. “The shank appeared to be made out of fencing that had been straightened, it had a black electrical tape grip, a piece of white shoelace for a lanyard and a length of dental floss tied on to the lanyard.” App. at 42. Upon further inspection of the vent, the officer “noticed a false bottom in the duct made out of covers from file folders that had been cut and taped together to fit the length and width of the duct between [Denny’s cell and the adjacent cell].” Id. When the false bottom was removed, the officer found another sharpened weapon similar to the first one. The second weapon was seven inches long and was made out of fencing with a grip made out of electrical tape and a black shoelace lanyard attached.[1]
Federal Bureau of Prisons (“BOP”) Program Statement 5270.07, Inmate Discipline and Special Housing Units, provides that it is an inmate’s responsibility to keep his or her area free of contraband. See 28 C.F.R. § 541.12 (2008). Relying upon that Program Statement, the DHO of FCI Fairton found that Denny had committed the prohibited act of “Possession of a Weapon,” in violation of BOP Code 104.[2] *143 App. at 44. The DHO sanctioned Denny with sixty days in disciplinary segregation and the forfeiture of forty days good time credit.[3] According to Denny, both he and his cellmate were charged with possession of a weapon, but the inmates in the adjacent cell, whom he posits may have had access to the weapons, were not charged.
Denny appealed first to the BOP Regional Director and next to the National Inmate Appeals Administrator, both of whom denied the appeals. The National Inmate Appeals Administrator wrote that “the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy.” Id. at 46.
Denny then filed a pro se petition for writ of habeas corpus. The District Court sua sponte dismissed the petition, stating that “it is clear that the findings of the [DHO] are supported by ‘some evidence,’ including the fact that the contraband weapons were found in the duct work of Petitioner’s assigned cell.” Id. at 10. Denny appealed to this court. After he filed a pro se opening brief, this court appointed pro bono counsel to represent him. Counsel subsequently filed opening and reply briefs on Denny’s behalf.[4]
II. Analysis
The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 2241, and this court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). This court reviews a district court’s denial of federal habeas relief de novo but reviews its factual findings for clear error. See Vega v. United States, 493 F.3d 310, 314 (3d Cir.2007).
Denny presents one claim: that the DHO’s disallowance of good time credits violates his due process rights under the Fourteenth Amendment.[5] Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008). When such a statutorily created right exists, “a prisoner has a constitutionally protected liberty interest in good time credit.” Young v. Kann, 926 F.2d 1396, 1399 (3d *144 Cir.1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).
In evaluating prisoners’ due process rights, the court must be sensitive to the “intricate balancing of prison management concerns with prisoners’ liberty.” Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). “Mindful that internal security is a chief concern in prisons, the [Supreme] Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells.” Doe v. Delie, 257 F.3d 309, 316 (3d Cir.2001) (citing Hudson v. Palmer, 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). “In order to further the safe, secure, and orderly running of its institutions,” the BOP has specifically authorized “searches of inmates and of inmate housing and work areas to locate contraband and to deter its introduction and movement.” 28 C.F.R. § 552.10 (2008).
Notwithstanding the prison’s interest in ensuring safety and security, a prisoner’s interest in good time credits “entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.” Wolff, 418 U.S. at 557, 94 S.Ct. 2963. “[R]evoeation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record.”[6] Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (internal quotation marks and citation omitted). As this court has clarified, the “some evidence” standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding. See Brown v. Fauver, 819 F.2d 395, 399 n. 4 (3d Cir.1987).
In Hill, a Massachusetts state prison guard opened a door to a walkway to find an inmate bleeding from the mouth and suffering from a swollen eye. The guard observed three inmates jogging together down the walkway, away from the scene. The guard “concluded that one or more of the three inmates had assaulted [the victim] and that they had acted as a group.” Hill, 472 U.S. at 448, 105 S.Ct. 2768. Two of the inmates were found to have planned, aided, or participated in the assault, in violation of prison regulations, despite written statements from the victim that they had not caused his injuries. Based solely upon the testimony and written statements of the guard, prison officials sanctioned each of the two inmates with the forfeiture of 100 days of good time credits as well as 15 days in isolation. The Supreme Court upheld the deprivation of good time credits, noting that “[although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.” Id. at 457, 105 S.Ct. 2768.
*145 The key question in this case is what limit the Due Process Clause places on the constructive possession theory in the prison context. Denny argues that constructive possession in the prison context requires a showing of “dominion and control over the contraband, as well as knowledge of it.” Appellants’ Br. at 9. While it is true that this is the standard definition of constructive possession in this circuit, Denny does not cite a single case from this court or any other court applying this definition of constructive possession in the prison context.[7] As noted above, the Supreme Court has held that a prison disciplinary decision need only be supported by “some evidence” in order to satisfy due process. Hill, 472 U.S. at 454, 105 S.Ct. 2768. Though the “some evidence” standard is a standard of appellate review and not a burden of proof, see Brown, 819 F.2d at 399 n. 4, a reviewing court need only find that the DHO’s decision had “some basis in fact” in order to affirm the decision as comporting with the Due Process Clause. Hill, 472 U.S. at 456, 105 S.Ct. 2768.
Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes “some evidence” of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits. The Seventh Circuit, applying a probability-based approach, held that a twenty-five percent probability that contraband found in a four-person cell belonged to one of the inmates constituted “some evidence.” See Hamilton v. O’Leary, 976 F.2d 341, 345-46 (7th Cir.1992) (“The proposition that constructive possession provides ‘some evidence’ of guilt when contraband is found where only a few inmates have access is unproblematical.”). More recently, the Eighth Circuit concluded that discovery of two homemade weapons found above the entry door to the common area of an eight-person cell constituted “some evidence” of possession. See Flowers v. Anderson, 661 F.3d 977, 980-81 (8th Cir.2011) (relying on a collective responsibility theory whereby each inmate is collectively culpable for contraband found in a shared area).
The BOP relies exclusively on a theory of collective responsibility to argue that the DHO’s findings and sanctions should be upheld. “Through the judicially recognized adaptation of collective responsibility ... the courts have been willing to accept the probabilities that an inmate has committed a sanctionable prohibited act when no direct evidence links him to it.” Appel-lees’ Br. at 8. The BOP further asserts that “[ijncarcerated inmates are often violent people with demonstrated proclivities for antisocial criminal conduct. Having stripped them of virtually every means of self-protection and outside aid, the BOP is not free to let the state of nature take its course.” Id. at 8-9.
Not only has the Eighth Circuit endorsed the application of collective responsibility, see Flowers, 661 F.3d at 980-81, but a judge of the Seventh Circuit has also suggested that he would subscribe to the collective responsibility theory. See Hamilton, 976 F.2d at 347 (stating that “purely collective guilt” might be deemed to satisfy *146 due process in the prison context) (Posner, J., dissenting).
The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, which provides that it is an inmate’s responsibility to keep his or her area free of contraband. See 28 C.F.R. § 541.12 (2008). Although the BOP Program Statement does not define the term “area,” a prisoner’s area at a minimum includes the prisoner’s cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes “some evidence” that each prisoner in that cell possessed the contraband.
Judge Rendell suggests that “this reasoning would allow prison officials to ignore the clear dictates of Hill, and be held to a lesser — indeed, unrelated — standard, ie., collective guilt, as a substitute for the ‘some evidence’ of possession requirement.” Dissenting Op. of Rendell, J. at 150. She further asserts that “[tjhe offense of ‘possession’ (just like ‘killing’ and ‘assault’) is no different in the prison context than outside that context.” Id. Contrary to Judge Rendell’s mistaken understanding of Hill, the “some evidence” standard of appellate review dramatically reduces the amount of evidence required for an inmate to be held responsible for offenses such as killing, assault, and possession of a weapon. In Hill, prison officials found two inmates responsible for assaulting another prisoner and deprived them each of 100 days of good time credits based solely on the testimony of a guard who observed them and a third prisoner leaving the scene. Such evidence would never be enough to find a defendant guilty of assault in a regular criminal courtroom, yet the Supreme Court held that it was sufficient to satisfy the Due Process Clause.
Furthermore, though the term collective responsibility or collective guilt does not appear in the Supreme Court’s opinion in Hill, in that case the Court implicitly endorses the application of collective responsibility to facts such as those at issue here. Three inmates were observed leaving the scene of an assault in Hill, and two of those inmates were held responsible. In the absence of evidence directly linking any one of the inmates to the assault, the Supreme Court upheld the prison’s sanctioning of two of those inmates as being not “without support or otherwise arbitrary.” Hill, 472 U.S. at 457, 105 S.Ct. 2768. In this case, two inmates shared a cell in which two homemade shanks were found, and one of those inmates, Denny, was sanctioned for possession of a weapon. The weapons may have belonged to Denny’s cellmate, but in accordance with Hill, prison officials did not violate Denny’s due process rights when they deprived him of his good time credits. Prison officials here had as evidence not only the presence of the weapons in a two-inmate cell but also the affirmative responsibility, of which the inmates were clearly on notice, that they were to keep their “area” free from contraband.[8] The evidence in this case, there *147 fore, is more substantial than the evidence presented against the inmates in Hill.
We are not oblivious to the realities of prison life that might make it difficult or even dangerous for prisoners in shared cells to be affirmatively responsible for policing the illicit activities of their cellmates. Nonetheless, the Due Process Clause requires us to balance a prisoner’s liberty interest in good time credits against the prison’s interest in maintaining a safe and secure environment. See Sandin, 515 U.S. at 478, 115 S.Ct. 2298. Assaults by inmates on both staff and other inmates are a major problem facing the federal prison system. From January to May 2012, there were approximately 215 serious assaults by inmates on other inmates and twelve serious assaults by inmates on prison staff. See Federal Bureau of Prisons, Assault Graphs, available at http://www.bop.gov/news/research_ projects/assaults/assaults.jsp (last visited Oct. 12, 2012). For the same time period, there were over 1,000 less serious assaults by inmates on other inmates as well as nearly 700 less serious assaults by inmates on prison staff.[9] Id. Prison safety concerns are particularly acute where, as here, the contraband consisted of weapons that even Denny’s counsel conceded were potentially lethal.
In the case before us, it is undisputed that two homemade shanks were found in a space accessible from within Denny’s cell. This evidence, by itself, constitutes “some evidence” that Denny possessed the weapons in question. Furthermore, and as noted herein, both the Seventh and Eighth Circuits have held inmates responsible for possession of contraband under circumstances similar to those present here. We see no reason to diverge from these courts. It follows that the DHO did not violate Denny’s due process rights when it found that he had committed the prohibited act of “Possession of a Weapon,” in violation of BOP Code 104, and sanctioned him with the forfeiture of forty days good time credit.
III. Conclusion
Accordingly, we will affirm the judgment of the District Court.

. Denny asserts that the two weapons were also accessible to the inmates in the adjacent cell. Appellees state, without support in the record, that there were two inmates in the adjacent cell who "possibly” had access to the area where the weapons were found. Appel-lees’ Br. at 13. According to Denny, however, the adjacent cell may have housed as many as three inmates.

. At the time Denny was charged, BOP Code 104 prohibited the act of "[possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition.” *143 See 28 C.F.R. 541.13 (2008). There are four categories of prohibited acts under BOP regulations: Greatest, High, Moderate, and Low Moderate. Code 104 is in the Greatest Severity Level Prohibited Acts category.

. The DHO’s written report is not part of the record in this case, and Appellees state that "Denny did not attach a complete copy of the Incident Report to the [habeas] petition, in which an additional statement made by him is recorded.” Appellees’ Br. at 4 n.3.

. Prior to the issuance of a briefing schedule, this court sua sponte consolidated this appeal with the factually similar appeal of Jose Hernandez-Zapata. See Hernandez-Zapata v. Schultz, No. 11-2018. Denny’s pro hono counsel acted as amicus counsel on behalf of Hernandez-Zapata in the consolidated appeals. In December 2012, Appellees filed a suggestion of mootness with this court stating that Hernandez-Zapata had completed serving the custodial portion of his criminal sentence and had been released to United States Department of Homeland Security, Immigration and Customs Enforcement detention. On February 8, 2013, Appellees informed this court that Hemandez-Zapata had been removed from the United States to Mexico. Because Hernandez-Zapata has served the custodial portion of his criminal sentence and because he can suffer no collateral consequence or continuing injury from the loss of the forty days good time credit, we conclude that Hernandez-Zapata’s claim is now moot. See Burkey v. Marberry, 556 F.3d 142, 148 (3d Cir.2009).

.Denny does not argue that his due process rights were violated when the DHO required him to spend sixty days in disciplinary segregation nor does he argue that the DHO hearings were procedurally defective in any way.

. Denny concedes that Hill's "some evidence" standard applies to his claim but argues that "[Revocation of an inmate's good conduct time must be based on the greater weight of the evidence.” Appellants’ Br. at 8-9. According to BOP regulations, the DHO’s decision "shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.” 28 C.F.R. § 541.17(f) (2008). Denny, however, points to no conflicting evidence that would trigger the regulation’s greater weight of the evidence requirement.

. Judge Rendell asserts that "[i]t is axiomatic that constructive possession requires either the exercise of control or dominion, or the power and intention to exercise dominion or control, over property.” Dissenting Op. of Rendell, J. at 148. As with Denny, Judge Ren-dell does not cite any case applying this definition of constructive possession in the prison context. There are no such cases because to apply this standard of constructive possession in the prison context would place an unreasonably high burden on prison officials, given their significant interest in maintaining safety and security within the prison.

. Judge Rendell states in a footnote that ''[i]f possession in the prison context embraces col *147 lective responsibility, as the majority contends, then any cellmate of a prisoner who is authorized to take medication would imper-missibly be in possession’ of another prisoner's medication by virtue of its presence in their shared cell.” Dissenting Op. of Rendell, J. at 150 n.7. Assuming, as Judge Rendell does in her hypothetical, that one of the prisoners is authorized to take the medication in question, the medication would not be contraband, and the prisoner's cellmate would have no affirmative responsibility to keep the cell free from such authorized medication. Thus, under this court’s opinion, the cellmate would not be impermissibly in "possession” of the medication simply because of its presence in the cell.

. Under BOP regulations, an inmate commits a Code 101 serious assault for ”[a]ssaulting any person, or [for] an armed assault on the institution’s perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).” 28 C.F.R. § 541.3(b), Table 1 (2012). An inmate commits a Code 224 less serious assault "when less serious physical injury or contact has been attempted or accomplished by an inmate.” Id.