**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2330
_____

DEREK A. CAPOZZI,
                    Appellant

v.

WARDEN USP - LEWISBURG
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 12-cv-00604)
District Judge:  Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2015
Before:  FUENTES, SHWARTZ and ROTH, Circuit Judges

(Opinion filed: May 15, 2015 )
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Derek A. Capozzi appeals from an order of the United States District Court for the Middle District of Pennsylvania, which denied his habeas petition. We will affirm the District Court's judgment.

Capozzi is a federal inmate serving a sentence for firearms and extortion offenses. In 2010, he was housed at the United States Penitentiary in Lewisburg, Pennsylvania. In March of that year, he was released to the custody of the United States Marshals Service on a writ of habeas corpus ad testifcandum to testify at a trial in Kentucky. The Marshals transferred Capozzi to the Grayson County Detention Center ("GCDC") for his time in Kentucky. When officials from GCDC were transporting Capozzi back to the airport to return to Lewisburg, Capozzi escaped and was later recaptured and eventually returned to USP-Lewisburg. After his return, Capozzi was disciplined for the escape under the Federal Bureau of Prisons' ("BOP") Inmate Discipline Program.[1] Among other sanctions, the Prison disallowed 68 days of good conduct time.

Following unsuccessful administrative appeals, Capozzi filed a petition for a writ of habeas corpus in the District Court arguing solely that the BOP lacked jurisdiction to discipline him for the escape because he was not in BOP custody at the time of the misconduct. The District Court rejected Capozzi's argument and he timely appealed.

---

[1] Capozzi was also criminally charged with and convicted of knowingly escaping from the GCDC officials, in violation of 18 U.S.C. § 751(a). United States v. Capozzi, 747 F. Supp. 2d 846, 848 (E.D. Ky. 2010), aff'd, 723 F.3d 720 (6th Cir. 2013), cert. denied, 134 S. Ct. 654 (2013).

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). In a federal habeas proceeding, we exercise plenary review over a district court's legal conclusions. Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013). We may affirm a district court for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

Capozzi argues on appeal that the BOP did not have jurisdiction to discipline him. He argues that "custody" for purposes of the federal criminal code is not the same as custody for purposes of BOP disciplinary proceedings, and that the latter requires actual physical custody of the inmate. He also argues that the Respondent's filings in response to his objections to the Magistrate Judge's Report and Recommendations, and in response to his motions to strike, should be stricken and the arguments therein should be deemed waived. We need not reach his waiver argument, because we conclude that even without considering any of the arguments that Respondent raised in the filings to which Capozzi objects, Capozzi's jurisdictional claim is wrong as a matter of law.

In examining whether the BOP has correctly construed the scope of its authority to discipline federal inmates, we first ask whether "Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). We have not discovered any statutory authority that states that only inmates in physical custody are subject to the BOP's discipline. See 18 U.S.C. § 4001(b)(2) (Attorney General may "classify the inmates[] and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation"); 18 U.S.C.

3

§ 4042(a)(3) ("The [BOP], under the direction of the Attorney General, shall-- . . . (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.").[2]  Because the statute is silent, we turn to the regulations.  "When a statute expressly leaves a gap for an agency to fill with its rulemaking authority, the agency's regulations must receive 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'"  Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997) (quoting Chevron, 467 U.S. at 844).

Capozzi urges us to consult 28 C.F.R. §§ 541.1 and 541.2.  He argues that the text of those regulations makes clear that the BOP's disciplinary rules apply only to inmates in physical custody of the Bureau, either by being in a BOP facility, or by being designated to a facility with which the BOP has an agreement.[3]  He notes that at the time

_____

[2] The pertinent portions of these statutes have not changed since the time of Capozzi's escape.

[3] The regulations provide as follows:

This subpart describes the Federal Bureau of Prisons' (Bureau) inmate discipline program.  This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts.  Sanctions will not be imposed in a capricious or retaliatory manner.  The Bureau's inmate discipline program is authorized by 18 U.S.C. 4042(a)(3).

28 C.F.R. § 541.1 (eff. June 20, 2011).

of the misconduct, he was not in the physical custody of a BOP facility, nor had he been designated to serve his sentence in a facility with which the BOP has an agreement. He also argues, by way of analogy, that federal inmates serving their sentences in non-contract facilities (such as GCDC), are not subject to the BOP's disciplinary rules.[4]

However, the regulation and Program Statement to which Capozzi refers were not promulgated until 2011. At the time of Capozzi's escape, the regulation read as follows:

> So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules. The provisions of this rule apply to *all persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons*.

28 C.F.R. § 541.10(a) (2010) (emphasis added). While this is a very broad statement, we cannot say that it is an arbitrary interpretation of the statute or manifestly contrary to the statute. We find that Capozzi was, at the very least, under the constructive control of the

---

This program applies to sentenced and unsentenced inmates in Bureau custody. It also applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons.

28 C.F.R. § 541.2 (eff. June 20, 2011).

[4] The BOP's Program Statement with regard to § 541.2 states that the "policy applies to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities . . . [but does] not apply to Federal inmates designated to a non-Federal facility (e.g., inmates serving Federal sentences in state or county facilities)." BOP Program Statement 5270.09 (eff. Aug. 1, 2011).

BOP at the time of his escape. Further, the corresponding Bureau of Prisons' Program Statement in effect at the time is similarly broad:

> Examples of persons to whom this policy applies include, but are not limited to, an inmate who is on pretrial status, *or on writ*, or on escorted trip or furlough, or who is escorted by U.S. Marshals or other federal law enforcement officials, or who is in a camp, contract facility, (other than contract CCCs) or hospital, or who is returned to Bureau custody from a contract facility (includes contract CCCs). These provisions do not apply to a federal inmate designated to a non-federal facility (e.g., inmates serving Federal sentences in state facilities or contract CCCs).

Program Statement 5270.08 (Dec. 4, 2009) (emphasis added). While Program Statements are due less deference than a regulation, see Roussos v. Menifee, 122 F.3d 159, 163-64 (3d Cir. 1997) (explaining that Program Statements are due less deference because they are not promulgated under the Administrative Procedures Act and they can be changed at will by the BOP), we are willing to give this particular Program Statement some deference, as it does not explicitly conflict with the regulation or governing statute, cf. id. at 164 (rejecting Program Statement that is inconsistent with statute and regulation). The statement clearly applies the provisions of the discipline program to someone in Capozzi's situation—he was "on writ" at the time of his escape.

In sum, as Capozzi does not dispute the fact that he has been convicted of an offense against the United States, he is and was subject to the discipline of the Attorney General (and the Attorney General's designee, the BOP) pursuant to 18 U.S.C. § 4042(a)(3). The regulation in effect at the time permissibly construed the statute to include discipline of inmates in the constructive control of the BOP, and the Program Statement made clear that misconduct while "on writ" would be covered.

For the foregoing reasons, we hold that the District Court properly denied the petition for a writ of habeas corpus, and we will affirm the Court's judgment.