**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4801
_____

STEPHEN BENSON,
                                                        Appellant

v.

UNITED STATES OF AMERICA; ADMINISTRATIVE REMEDY COORDINATOR
CENTRAL OFFICE; ADMINISTRATIVE REMEDY COORDINATOR NORTHEAST
REGIONAL OFFICE, Chief and Regional Counsel; WARDEN J.T. SHARTLE; MR.
POTTER, Disciplinary Hearing Officer; MS. K. CONCEPTION, Education Teacher;
MR. GINDVILLE, Unit-Manager, A Unit; MS. N. MORI, Case Manager; MS. SMITH,
Case Manager, A Unit; COUNSELOR LOMBARDI, A-Unit; ADMINISTRATIVE
REMEDY COORDINATOR; ADMINISTRATIVE ASSISTANT FCI FAIRTON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 1-13-cv-00213)
District Judge:  Honorable Renée M. Bumb
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6
August 20, 2015

Before:  AMBRO, JORDAN and KRAUSE, Circuit Judges

(Opinion filed: August 25, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does

PER CURIAM

Stephen Benson, a federal prisoner proceeding pro se, appeals from orders of the United States District Court for the District of New Jersey dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he sought relief from sanctions imposed in prison disciplinary proceedings. We will summarily affirm.

On February 25, 2012, Officer Concepcion was in the library at FCI Fairton when she noticed that Benson, who was seated at another table, was staring at her. She soon realized that Benson was masturbating because his pants were pulled down "lower than appropriate," his penis was out, and he was massaging it. She ordered him to stop and had him removed from the library. The incident resulted in Benson being charged with a prohibited act, i.e., "[e]ngaging in sexual acts." 28 C.F.R. § 541.3, Table 1, Code 205.

A disciplinary hearing was held on March 8, 2012. Benson was advised of his rights and waived the services of a staff representative. He denied the charge, stating that he had psoriasis over most of his body and had his hands in his pants because he was scratching himself. Benson requested that the inmates who were sitting at the library table with him be called as defense witnesses, as well as Dr. Morales, who he claimed would testify about the extent of his psoriasis. The inmates were not called because Benson could not identify them and could only indicate that they were Jamaican. The

not constitute binding precedent.

2

Disciplinary Hearing Officer ("DHO") did not call the doctor because he accepted as undisputed that Benson had psoriasis over a large portion of his body.

The DHO found that Benson had engaged in sexual acts in violation of Code 205 by "exposing and rubbing [his] penis in view of staff," relying on the eyewitness account of Officer Concepcion and Benson's partial admission that he had his hands in his pants. The DHO gave little weight to Benson's defense that he was merely scratching himself because it did not account for the fact that Officer Concepcion observed his exposed penis. The DHO also found Benson's account unbelievable, concluding that a person who had an itch of the "nature and degree" Benson allegedly had would have gone to a restroom to address the issue. Sanctions were imposed, including the loss of 27 days of good conduct time.

After pursuing administrative remedies, Benson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his due process rights were violated during the disciplinary proceedings. The District Court dismissed all but one of his claims with prejudice. However, the court granted Benson leave to "amend and clarify" a claim regarding the denial of the unidentified inmates as witnesses. Benson subsequently submitted a letter to the court regarding that claim. After considering Benson's letter, the District Court dismissed the claim. Benson then filed this appeal, but he has not filed any argument in support of it.

We have jurisdiction pursuant to 28 U.S.C. § 1291.[1] We review the District

Court's denial of habeas relief de novo and its factual findings for clear error. Denny v.

Schultz, 708 F.3d 140, 143 (3d Cir. 2013). If no substantial question is presented, we

may affirm on any ground supported by the record. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6;

Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

A prisoner has a liberty interest in good conduct credit. Wolff v. McDonnell, 418

U.S. 539, 557 (1974). Thus, a disciplinary hearing that may result in the loss of such

credit must provide certain due process safeguards to a prisoner, including: (1) at least

24-hour advance notice of the charges; (2) an opportunity to call witnesses and present

documentary evidence; and (3) a written decision explaining the evidence relied upon and

the reasons for the disciplinary action. Id. at 564-66. The Supreme Court has held that

"revocation of good time does not comport with the minimum requirements of procedural

due process unless the findings of the prison disciplinary board are supported by some

evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (internal

quotation marks and citations omitted). This standard is minimal and "does not require

examination of the entire record, independent assessment of the credibility of witnesses,

or weighing of the evidence." Id. at 455. Rather, the relevant inquiry "is whether there is

any evidence in the record that could support the conclusion reached by the disciplinary

---

[1] Benson's challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to 28 U.S.C. § 2241. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008). A certificate of appealability is not required to appeal from the

4

board." Id., at 455-56.

Here, the DHO's finding that Benson engaged in sexual acts in violation of Code 205 by "exposing and rubbing [his] penis in view of staff" was supported by "some evidence." The DHO relied upon the incident report filed by Officer Concepcion, in which she stated that she observed Benson with his pants pulled down, massaging his exposed penis. The "some evidence" standard may be satisfied solely by such an incident report. See Hudson v. Johnson, 242 F.3d 534, 536-37 (5th Cir. 2001); McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). In this case, however, the DHO also relied on Benson's partial admission that he had his hands in his pants. Accordingly, the decision was supported by sufficient evidence to comply with the requirements of procedural due process.[2]

_____

denial of a § 2241 petition. See Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009).

[2] Although the District Court determined that the incident report and Benson's admission constituted "some evidence," it went further to conclude – relying on Pachtinger v. Grondolsky, 340 F. App'x 774 (3d Cir. 2009) – that Benson need not have engaged in a sexual act to have violated Code 205, but only to have "engaged in activity that could have been perceived as a sexual act." Op. at 9, Benson v. United States, No. 13-0213, (D.N.J. Jan. 8, 2014), ECF No. 3. We disagree, and find the District Court's reliance on Pachtinger misplaced. Pachtinger was not found to have violated Code 205, but rather Code 299, which prohibits "[c]onduct which disrupts or interferes with the security or orderly running of the institution . . . most like another [h]igh severity prohibited act." 28 C.F.R. § 541.3, Table 1, Code 299. In Pachtinger, the conduct was found to be "most like" engaging in a sexual act. 340 F. App'x at 776. The following passage from that decision merely reflects the nature of the findings in that case, and is not a holding regarding what constitutes a violation of Code 205: "Pachtinger was not found to have engaged in a sexual act; rather, he was found to have engaged in activity that could have been perceived as a sexual act and which was disruptive to the orderly running of the institution." Id. at 776-77. In sharp contrast, Benson was found to have

5

Benson's assertion that his rights were violated because the DHO considered the incident report to be more credible than his defense does not disturb our conclusion. A challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by "some evidence" because the standard does not require "weighing of the evidence." Hill, 472 U.S. at 455. Furthermore, we note that the DHO's decision complied with the requirement that a decision must be based on the "greater weight of the evidence" when conflicting evidence is presented. 28 C.F.R. § 541.8(f). The written decision reflects that the conflicting evidence was considered, but that the DHO found the greater weight of the evidence to indicate that Benson had violated Code 205.

We agree with the District Court that Benson's due process right to present witnesses was not violated by the DHO's refusal to call Dr. Morales and the unidentified inmates. Benson wanted Dr. Morales to testify that Benson had psoriasis over a large portion of his body. This testimony was not necessary because the DHO accepted that fact as undisputed. As for the three inmates seated with Benson in the library at the time of the incident, Benson could not identify them, thus the DHO could not call them. Benson has not presented any legal basis, nor do we find any, that the DHO was required to determine the identity of these witnesses for Benson.

violated Code 205 by "exposing and rubbing [his] penis in view of staff." Thus, that finding had to have been supported by "some evidence" of such conduct. It could not have been sustained merely by Benson's concession that he was scratching his unexposed

6

As for Benson's related claim that his rights were violated by the refusal to provide the "30 Inmate Out-Count Sheet," we note that it remains somewhat vague. Benson claimed that he could have tried to determine the identity of the three inmates if he had been able to see "30 Inmate Out-Count Sheet" because he knew their first names. This conflicts somewhat with the DHO's report, which notes that "Benson stated he did not know the identity of the inmates at the table with him, but indicated they were Jamaican." When responding to the District Court's order, Benson alleged that the DHO "took it upon himself to fabricate [the unidentified witnesses] as Jamaican." Moreover, Benson never revealed the first names of the witnesses, so his claim that he could have identified the inmates remains general and conclusory. In any event, Benson told the District Court that "the difference the witnesses would have made remains a mistry [sic]," but that they would nonetheless have testified that Benson was not facing Officer Concepcion in the library and therefore her assumptions about what he was doing were incorrect. This appears to be nothing more than an unsupported attempt to refute Officer Concepcion's eyewitness account. The vagueness of Benson's claim, coupled with the self-serving speculation about the unidentified witnesses' testimony, is insufficient to establish that he was prejudiced by the failure to call the witnesses or that his due process rights were violated.

Benson's remaining claims also lack merit. He asserted that the DHO was biased

penis, as the District Court theorized.

7

against him and inclined to accept Officer Concepcion's account of events over his own because the DHO worked with her. This claim of general bias does not indicate the type of "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge" that shows, or would lead us to question, the DHO's impartiality. Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974). To the extent Benson alleged that the DHO's report was untimely, we note that there is no regulatory requirement regarding the deadline for completion and delivery of such reports. Furthermore, the report was delivered to Benson about a month after the hearing, and he has failed to explain how that prejudiced him or constituted a violation of his rights. Although Benson complained extensively about the administrative remedies process at FCI Fairton, these complaints are of no moment because he has received judicial review of the merits of all of his claims.

Accordingly, we will summarily affirm the District Court's orders. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.