BLD-135                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4349
_____

GABRIEL ROSA-DIAZ,
                              Appellant

v.

SGT. DOW; CO SHERIDAN; K. BEARJAR; R. REED; A. BECK;
K. CAMERON; D. VARNER; R.M. LEWIS; J. WETZEL
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-14-cv-00005)
District Judge: Honorable Kim R. Gibson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
February 16, 2017
Before:  AMBRO, GREENAWAY, Jr., and SCIRICA, Circuit Judges

(Opinion filed:  March 23, 2017)

_____

OPINION
_____

PER CURIAM

       Gabriel Rosa-Diaz appeals pro se from the judgment of the United States District

Court for the Western District of Pennsylvania entered following a jury trial in his 42

U.S.C. § 1983 action.  We will summarily affirm.

I.

Rosa-Diaz initiated this action in 2014 against various employees of the Pennsylvania Department of Corrections—mostly officials at SCI-Cresson—alleging that they failed to protect him from being assaulted by another inmate (Peter Robinson), and then improperly adjudicated related misconduct reports and a grievance he filed after the incident.

According to Rosa-Diaz's complaint, Defendant Sergeant Dow was aware of Robinson's history of violence, but nonetheless permitted Robinson "to run back and forth freely from A-wing to B-wing," where Rosa-Diaz was housed. On April 8, 2012, Robinson allegedly confronted Rosa-Diaz on B-wing about an unpaid debt—advising that he would return the next day to collect, using force if necessary. Rosa-Diaz claimed that he reported this threat to Dow, telling him that he (Rosa-Diaz) "didn't feel comfortable with Robinson continuing to be allowed to enter B-wing from A-wing chasing [him] down trying to extort him." Rosa-Diaz claimed that Robinson returned the next day, as promised, and stabbed him in the head with a shank, and that Defendant Corrections Officer Sheridan, after witnessing the attack, "took off running in the opposite direction." Rosa-Diaz claimed that he ultimately fended off the attack and then stabbed Robinson in self-defense. Dow later intervened and separated the inmates.

As a result of this incident, Rosa-Diaz was issued two misconduct reports—one issued by Sheridan for fighting, and the other issued by Dow for allegedly threatening Dow after he attempted to restrain Rosa-Diaz. Defendant Hearing Examiner Robert Reed

2

later found Rosa-Diaz guilty on both reports, sentencing him to a total of 360 days' disciplinary time, and ordering him to pay costs associated with the incident.[1] Rosa-Diaz fully appealed these decisions to Defendant Donna Varner, the DOC's Chief Grievance Officer, and she affirmed Reed's decisions. Rosa-Diaz also unsuccessfully filed a grievance against Dow, alleging that Dow improperly permitted Robinson to access B-wing. Defendant Unit Manager Bearjar rejected this grievance, concluding that Robinson had authorization to access B-wing because he was a representative for the Inmate Betterment Organization. Defendant Superintendent Cameron, and eventually Varner, affirmed Bearjar's determination on this basis.

Rosa-Diaz asserted failure-to-protect and due process claims against Dow and Sheridan; a due process claim against Reed premised on the alleged improper adjudication of his misconduct report; and due process and "supervisor liability" claims against the remaining Supervisor Defendants—Bearjar, Cameron, Varner, Business Officer Beck, Chief Hearing Examiner Lewis, and Secretary of Corrections Wetzel—premised on their alleged failure to appropriately resolve his misconduct reports and grievance. He also asserted state negligence and intentional-infliction-of-emotional-distress claims.

---

[1] Rosa-Diaz requested a hearing under Holloway v. Lehman, 671 A.2d 1179 (Pa. Commw. Ct. 1996), and after that hearing, costs were assessed against him in the amount $31,414.30—two-thirds of Robinson's medical expenses paid by the Commonwealth. See 37 Pa. Code § 93.12(c)(4) ("The [DOC] will charge a fee to an inmate for . . . . Medical service provided to another inmate as a result of assaultive conduct engaged in by an inmate to be charged the fee.").

Early in the litigation, the District Court granted Defendants' partial motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), and dismissed all claims except the failure-to-protect claim against Dow. Ultimately a jury found that Dow did not act with deliberate indifference in failing to protect Rosa-Diaz from Robinson's attack. Rosa-Diaz timely appealed from the District Court's entry of judgment following the jury verdict.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal under Rule 12(b)(6), W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 (3d Cir. 2010), and ask whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). We may summarily affirm the District Court where "it clearly appears that no substantial question is presented." 3d Cir. I.O.P. 10.6 (2015).

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust available administrative remedies before filing suit, see 42 U.S.C. § 1997e(a), and this "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies is an affirmative defense, but was appropriately raised here in Defendants' motion to dismiss—with respect to the failure-to-protect claim

4

against Sheridan—because Rosa-Diaz "did not even attempt to file a grievance [against Sheridan] for 'initial review.'" Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Rosa-Diaz does not dispute that he failed to name Sheridan in his grievance related to the assault[2]—and because it would have been "practicable" for him to do so—his failure-to-protect claim is procedurally defaulted. See Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). The District Court properly dismissed it because no basis exists to excuse this default.[3]

Rosa-Diaz also claimed that Reed denied him due process in adjudicating his misconduct reports because he "disregarded evidence that clearly place[d] liability [on] inmate Robinson." In other words, he claimed that Reed improperly weighed the evidence. But "a reviewing court need only find that the [] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause." Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 456 (1985)). This standard was met here. Reed

---

[2] He attached the grievance to his complaint and it mentioned only Dow.

[3] We recognized in Spruill, 372 F.3d at 234, that "the purpose of the [grievance process] is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." This did not occur here because Sheridan was never identified as being within the scope of the grievance—the review focused solely on the conduct of Dow.

specifically relied on the written reports provided by Dow and Sheridan, and credited

these reports over the evidence provided by Rosa-Diaz.[4]

He also asserted a due process claim based on the assessment of damages arising

from the misconduct reports. He did not, however, identify any particular procedural

problems with the Holloway hearing itself, the subsequent calculation of damages, or the

prison's right to charge him for medical costs he caused; he merely claimed—like his

other due process claim—that any assessment was improper because Robinson was the

responsible party. This claim fails for the same reason as his weight-of-the-evidence

claim, and it is clear that Defendants otherwise afforded him appropriate process in

assessing damages.[5] See Wolff v. McDonnell, 418 U.S. 539, 563 (1974) (due process, in

the prison context, generally requires only "advance written notice of the claimed

violation and a written statement of the factfinders as to the evidence relied upon and the

reasons for the [] action taken").

---

[4] Reed opined that he "believes the staff member's written report over the denial of Rosa-Diaz that Rosa-Diaz did in fact engage in a fight." It appears that Rosa-Diaz also asserted independent due process claims against Dow and Sheridan based on their issuance of the allegedly unfounded reports. These claims fare no better. See Smith v. Mensinger, 293 F.3d 641, 653–54 (3d Cir. 2002) ("[D]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports.").

[5] Rosa-Diaz attended the Holloway hearing, where he was permitted to present evidence and contest any evidence presented by the DOC. He was later provided the hearing examiner's report and recommendation containing a calculation of damages, and then filed written exceptions, which Wetzel overruled.

As to the other claims against the Supervisor Defendants, in the absence of "policy, practice, or custom"—which Rosa-Diaz did not allege here[6]—supervisory liability may exist under § 1983 only if a defendant "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010)). The District Court properly dismissed his Eighth Amendment claims because he premised them solely on the Supervisor Defendants' after-the-fact participation in reviewing grievances or appeals, generally an insufficient basis to establish "personal knowledge" for purposes of § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988); see also George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

The District Court also properly dismissed the due process claims against the Supervisor Defendants because they afforded Rosa-Diaz appropriate process in resolving his misconduct reports, see Wolff, 418 U.S. at 563, and "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). In any event, Rosa-Diaz has

---

[6] Although Rosa-Diaz generally alleged that some of the Supervisor Defendants failed to adequately supervise Dow and Sheridan, he did not allege that any of them "established or enforced policies and practices directly causing the constitutional violation," Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015), as he must do to state a claim based on policy, practice, or custom.

not identified any genuine problem with the grievance-resolution procedures, beyond his dissatisfaction with the outcome.

Finally, we have reviewed the District Court's order disposing of the pretrial motions in limine and perceive no abuse of discretion.[7]  See Forrest v. Beloit Corp., 424 F.3d 344, 349 (3d Cir. 2005) ("[D]eterminations concerning the admissibility of evidence are reviewed for an abuse of discretion.").  And because Rosa-Diaz failed to file post-verdict motions, we are "without power to direct the District Court to enter judgment contrary to the one it had permitted to stand."  Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400–01 (2006) (quoting Cone v. W. Va. & Paper Co., 330 U.S. 212, 218 (1947)).  Accordingly, we will summarily affirm.[8]

---

[7] On appeal, Rosa-Diaz argues that the District Court should not have permitted Bearjar to testify at trial, and should not have permitted Dow to introduce a picture of the shank Rosa-Diaz used to stab Robinson.  But he has offered no meaningful argument as to why such evidence should have been excluded, or how its introduction unfairly prejudiced him.

[8] The District Court properly concluded that his state-law claims—negligence and intentional infliction of emotional distress—were barred by Pennsylvania's sovereign immunity statute.  With exceptions not relevant here, employees of Commonwealth agencies acting within the scope of their duties enjoy immunity for their negligent acts.  See 42 Pa. Cons. Stat. § 8522.  They are also immune from "intentional tort claims."  La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).