**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3788 & 17-1562
_____

EDWIN JACQUET,
                                        Appellant

v.

WARDEN FORT DIX FCI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 1-16-cv-04368)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 17, 2017

Before:  AMBRO, KRAUSE and NYGAARD, Circuit Judges

(Opinion Filed: August 29, 2017)
_____

OPINION[*]
_____

PER CURIAM

        Pro se appellant Edwin Jacquet appeals the District Court's orders denying his

petition under 28 U.S.C. § 2241 and denying his motion under Fed. R. Civ. P. 59(e).  We

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

will affirm in part, vacate in part, and remand for further proceedings (including an evidentiary hearing).

Jacquet is a federal prisoner. In 2012, he pleaded guilty in the Southern District of New York to conspiracy to commit bank fraud and was sentenced to 63 months' imprisonment. He earned a 12-month sentence reduction for participating in the Residential Drug Abuse Program and approximately 172 days of good-time credit. After serving 32 months, he was transferred to a halfway house to complete his sentence.

Jacquet claims that, while in the halfway house, his mother and sister visited him, bringing a box of Nature Valley Lemon Poppy Seed Breakfast Biscuits. Jacquet says that he ate six of these biscuits before realizing that they contained poppy seeds. Jacquet feared that eating these poppy seeds could trigger a positive urinalysis result on one of the random drug tests to which he was subjected. He thus informed Rohan, a staff member at his halfway house, that he had eaten the biscuits; Rohan assured him that it would not be a problem. Nevertheless, at 10:30 that night, LabCorp conducted a urinalysis drug test. Jacquet tested positive for codeine and morphine.

On the day that it received the result of this test (October 13, 2015), the halfway house issued an incident report charging Jacquet with using narcotics. That day, Jacquet met with a staff member. Jacquet denied the charge, blamed it on the poppy seeds, asked for a retest or a hair test, and requested that Rohan be interviewed. On October 14, 2015, the Center Discipline Committee held a hearing on the charge. The parties dispute whether Jacquet was physically present at this hearing. Relying on the results of the

2

urinalysis test, the Committee found Jacquet guilty of the offense. The Committee recommended that Jacquet be returned to a more-secure facility and that he be stripped of his good-time credit; the next day (October 15, 2015), he was transferred to a detention center. Also on October 15, 2015, the Bureau of Prisons (BOP) revoked Jacquet's 12-month sentence credit. On November 4, 2015, a hearing officer sanctioned Jacquet to the loss of 85 days of good time.

After making protracted but unsuccessful efforts to challenge the BOP's decisions and to obtain hair-follicle testing, Jacquet, through counsel, filed a § 2241 petition.[1] In his petition, he provided a wealth of citations in support of his contention that the consumption of poppy seeds can cause positive urinalysis results for codeine and morphine and that a hair test would eliminate this type of "false positive." He alleged that his due process rights had been violated in a variety of ways. The District Court denied each of his claims, and Jacquet filed a timely notice of appeal. That appeal has been docketed at C.A. No. 16-3788. Jacquet also filed a Rule 59(e) motion, which the District Court denied. Jacquet appealed that order; this appeal has been docketed at C.A. No. 17-1562. The Clerk consolidated these two appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Jacquet's due-process challenge to the disciplinary hearing was properly brought under § 2241 because it entailed the loss of good-time credits. See Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam). We review the District Court's denial of habeas relief de novo

---

[1] The Government waived any exhaustion defense. See Gov't Resp. to § 2241 Petition at pg. 5 n.5.

and its factual findings for clear error. Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013). We review the District Court's denial of a Rule 59(e) motion for abuse of discretion. See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

While Jacquet raised numerous claims before the District Court, he has presented only three in his opening brief, and we thus limit ourselves to reviewing those three claims. See, e.g., United States v. Jackson, 849 F.3d 540, 555 n.13 (3d Cir. 2017). Of these three arguments, Jacquet focuses primarily on his contention that the Community Based Program Agreement — which set forth the terms and conditions of his pre-release transfer to the halfway house — is an unenforceable contract of adhesion. However, he presented this argument for the first time in his Rule 59(e) motion. The District Court denied the claim on the ground that Rule 59(e) motions are appropriate only to rectify plain errors of law or to offer newly discovered evidence, and may not be used to assert new arguments that could have been raised earlier. The District Court did not err in so holding. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008); Max's Seafood Café, 176 F.3d at 677.[2]

Next, Jacquet argues that he was excluded from the disciplinary hearing in derogation of his due process rights. The District Court rejected this claim, concluding

---

[2] Jacquet blames his attorney for failing to press this claim earlier, but "[t]he remedy in a civil case, in which chosen counsel is negligent, is an action for malpractice," not an appeal. Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980) (internal quotation marks omitted); see also Nelson v. Boeing Co., 446 F.3d 1118, 1119 (10th Cir. 2006) ("The general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial.").

4

both that Jacquet had been physically present and that, in any case, he had not been prejudiced. We conclude that the District Court should not have disposed of this claim without holding an evidentiary hearing.

Turning first to the factual question of whether Jacquet was excluded from this hearing, as the District Court explained, the Government offered some evidence that Jacquet had been present — he placed his initials on a report from the hearing next to statements setting forth the time and date of the hearing and that he had been advised of various rights, and, while he filed a variety of administrative grievances and appeals, he never previously alleged that he had been excluded. However, Jacquet also squarely asserted, in both his verified § 2241 petition and his reply brief, that he had not been present. We conclude that, in these circumstances, the Government's evidence was not so strong as to permit the District Court to reject Jacquet's allegations and resolve the factual dispute without first holding an evidentiary hearing. See generally Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) ("A district court must hold a hearing if the petitioner has alleged facts that, if proved, would entitle him or her to relief and an evidentiary hearing is necessary to establish the truth of those allegations.").

The District Court also ruled that, even if Jacquet had been excluded, he was not prejudiced because the BOP was already familiar with his consumption-of-poppy-seeds defense. However, this analysis undervalues the importance of Jacquet's presence at the hearing. His entire defense depended on the BOP's finding credible his explanation that his positive urinalysis test was caused by his consumption of poppy seeds; given the

5

importance of his credibility, a written or second-hand statement would be a poor substitute for in-person testimony. See Goldberg v. Kelly, 397 U.S. 254, 269 (1970) (stating, in a benefits-termination case, that "where credibility and veracity are at issue . . . written submissions are a wholly unsatisfactory basis for decision"); Wheeler v. Sims, 951 F.2d 796, 801 (7th Cir. 1992) (stating that oral testimony is superior to written statements in prison-disciplinary proceedings "for the vast majority of prisoners are not well educated and thus are better able to express themselves orally than in writing"). Moreover, being excluded from the hearing would have prevented Jacquet from monitoring the Government's presentation of evidence and otherwise administering his defense. Thus, we conclude that the District Court also erred in denying this claim for lack of prejudice. We will therefore vacate the District Court's judgment as to this claim and remand for an evidentiary hearing to resolve the factual dispute concerning whether Jacquet was physically present at the hearing.

Jacquet's final argument is that the BOP violated his due process rights by denying his request to obtain hair-testing evidence at his own expense. The Supreme Court has held that an inmate facing the loss of good-time credits has a due process right to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 566 (1974); see also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). "Although prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion

6

afforded prison officials is not without limits.'" Burns v. Pa. Dep't of Corr., 642 F.3d 163, 173 (3d Cir. 2011) (quoting Young, 926 F.2d at 1400). Thus, we typically require prison officials to "determine whether there are legitimate penological reasons to deny the prisoner access to the evidence requested." Id. at 174. Here, the Government has presented no evidence whatsoever detailing its rationale for preventing Jacquet from obtaining hair-testing evidence. We will therefore vacate the District Court's order as to this claim and remand the matter to the District Court for it to determine whether the BOP had a legitimate basis to deny Jacquet access to this secondary testing.

Accordingly, we will vacate the District Court's judgment as to Jacquet's claims that the BOP violated his due process rights by (a) excluding him from the hearing and (b) denying hair testing, and will remand for further proceedings as to these claims. On remand, the District Court should conduct an evidentiary hearing as to claim (a). In all other respects, we will affirm the District Court's judgment.